UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM GUIFFRIDA, DINAMICO CORPORATION, 1629 PITTSTON LLC, 111 PROSPECT LLC, 101 PROSPECT LLC, EAST SCRANTON PROPERTIES LLC, 425 COLFAX LLC, 106 S. MAIN LLC, 610 PROSPECT LLC, 1401 PROSPECT LLC, 857 CAPOUSE LLC, 114 PROSPECT LLC, 536 BEECH LLC, 932 CAPOUSE LLC, 821 MADISON LLC, 1326 GIBSON LLC, 643 MONROE LLC, 212 ASH LLC, and 110 PROSPECT LLC, | CIVIL ACTION NO. _____ |
| Plaintiffs | JURY TRIAL DEMANDED |
| vs. | ELECTRONICALLY FILED |
| CITY OF SCRANTON, | |
| Defendant | |

## **COMPLAINT**

Plaintiffs, ADAM GUIFFRIDA, DINAMICO CORPORATION, 1629 PITTSTON LLC, 111 PROSPECT LLC, 101 PROSPECT LLC, EAST SCRANTON PROPERTIES LLC, 425 COLFAX LLC, 106 S. MAIN LLC, 610 PROSPECT LLC, 1401 PROSPECT LLC, 857 CAPOUSE LLC, 114 PROSPECT LLC, 536 BEECH LLC, 932 CAPOUSE LLC, 821 MADISON LLC, 1326 GIBSON LLC, 643 MONROE LLC, 212 ASH LLC, and 110 PROSPECT LLC, by and through their counsel, Paul G. Batyko III, Esq. of Batyko Law LLC, and

1

Patrick Howard, Esq. of Saltz, Mongeluzzi, Barrett & Bendesky, P.C., hereby file this Complaint against the Defendant, the CITY OF SCRANTON, and in support thereof, avers as follows:

## PARTIES

1.    Plaintiff, ADAM GUIFFRIDA (hereinafter "*Guiffrida*"), is an adult individual and a resident of this Commonwealth and the City of Scranton residing at 1115 Electric Street, Scranton, PA 18509.

2.    Plaintiff, DINAMICO CORPORATION (hereinafter "*Dinamico*"), is a corporation organized under the laws of the Commonwealth of Pennsylvania and operating as a real estate management company for the remaining Plaintiff-entities. Dinamico holds a valid Home Improvement Contractor ("*HIC*") license issued by the Pennsylvania Office of Attorney General, PA HIC # 63506.

3.    Dinamico owns and operates the aggrieved property located within the City of Scranton at 1120 Columbia Street, Scranton, PA 18509 (hereinafter "*1120 Columbia Property*").

4.    Plaintiff, 1629 PITTSTON LLC (hereinafter "*1629 Pittston*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 1629 Pittston Avenue, Scranton, PA 18505 (hereinafter the "*1629 Pittston Property*").

5.     Plaintiff, 111 PROSPECT LLC (hereinafter "***111 Prospect***"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 111 Prospect Avenue, Scranton, PA 18505 (hereinafter the "***111 Prospect Property***").

6.     Plaintiff, 101 PROSPECT LLC (hereinafter "***101 Prospect***"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 101-103 Prospect Avenue, Scranton, PA 18505 (hereinafter the "***101-103 Prospect Property***").

7.     Plaintiff, EAST SCRANTON PROPERTIES LLC (hereinafter "***East Scranton Properties***"), is a Pennsylvania limited liability company which previously owned and operated the 101-103 Prospect Property prior to 101 Prospect.

8.     Plaintiff, 425 COLFAX LLC (hereinafter "***425 Colfax***"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 425-427 Colfax Avenue, Scranton, PA 18510 (hereinafter the "***425-427 Colfax Property***").

9.     Plaintiff, 106 S. MAIN LLC (hereinafter "***106 S. Main***"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 106-108 S. Main, Avenue, Scranton, PA 18504 (hereinafter the "***106-108 South Main Property***").

10.     Plaintiff, 610 PROSPECT LLC (hereinafter "*610 Prospect*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 610-612 Prospect Avenue, Scranton, PA 18505 (hereinafter the "*610-612 Prospect Property*").

11.     Plaintiff, 1401 PROSPECT LLC (hereinafter "*1401 Prospect*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 1401 Prospect Avenue, Scranton, PA 18505 (hereinafter the "*1401 Prospect Property*").

12.     Plaintiff, 857 CAPOUSE LLC (hereinafter "*857 Capouse*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at Capouse Avenue and Green Place, Scranton, PA 18509 (hereinafter the "*857 Capouse Property*").

13.     Plaintiff, 114 PROSPECT LLC (hereinafter "*114 Prospect*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 114 Prospect Avenue, Scranton, PA 18505 (hereinafter the "*114 Prospect Property*").

14.     Plaintiff, 536 BEECH LLC (hereinafter "*536 Beech*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 536-538 Beech Street, Scranton, PA 18505 (hereinafter the "*536-538 Beech Property*").

15.    Plaintiff, 932 CAPOUSE LLC (hereinafter "*932 Capouse*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 932 Capouse Avenue, Scranton, PA 18509 (hereinafter the "*932 Capouse Property*").

16.    Plaintiff, 821 MADISON LLC (hereinafter "*821 Madison*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 821-823 Madison Avenue, Scranton, PA 18510 (hereinafter the "*821-823 Madison Property*").

17.    Plaintiff, 1326 GIBSON LLC (hereinafter "*1326 Gibson*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 1326 E. Gibson Street, Scranton, PA 18510 (hereinafter the "*1326 E. Gibson Property*").

18.    Plaintiff, 643 MONROE LLC (hereinafter "*643 Monroe*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 643 Monroe Avenue, Scranton, PA 18510 (hereinafter the "*643 Monroe Property*").

19.    Plaintiff, 212 ASH LLC (hereinafter "*212 Ash*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 212 Ash Street, Scranton, PA 18509 (hereinafter the "*212 Ash Property*").

20.    Plaintiff, 110 PROSPECT LLC (hereinafter "*110 Prospect*"), is a Pennsylvania limited liability company owning and operating the aggrieved property located at 110 Prospect Avenue, Scranton, PA 18505 (hereinafter the "*110 Prospect Property*").

21.    The 1120 Columbia Property, the 1629 Pittston Property, the 111 Prospect Property, the 101-103 Prospect Property, the 425-427 Colfax Property, the 106-108 S. Main Property, the 610-612 Prospect Property, the 1410 Prospect Property, the 857 Capouse Property, the 114 Prospect Property, the 536-538 Beech Property, the 932 Capouse Property, 821-823 Madison Property, the 1326 E. Gibson Property, the 643 Monroe Property, the 212 Ash Property, and the 110 Prospect Property shall be collectively referred to as the "*Propertie*s."

22.    Defendant, the CITY OF SCRANTON (hereinafter the "*City*" or "*Defendant*"), is a municipality duly incorporated within the Commonwealth of Pennsylvania and having offices located at 340 North Washington Avenue, Scranton, Lackawanna County, PA 18503.

## JURISDICTION AND VENUE

23.    This action arises under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988.

24.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and the aforesaid statutory and constitutional provisions.

25.    The unlawful actions alleged herein were committed in Scranton, Lackawanna County, Pennsylvania, which is located in the Middle District of Pennsylvania, and therefore, venue is proper in this Court.

26.    At all times relevant and material hereto, and with respect to all actions described herein, Defendant was acting under color of law, and under and through the authority of officials of the City, including PATRICK L. HINTON (hereinafter    "*Hinton*")[1],    and    WILLIAM    L.    COURTRIGHT    (hereinafter "*Courtright*"), former Mayor of the City of Scranton.

27.    This action is brought against the City as a result of its policies, practices, and customs as implemented by and/or acquiesced in by its municipal decision-makers and/or policymakers, including Hinton and Courtright, which directly and proximately caused Plaintiffs' constitutional violations alleged herein.

## FACTUAL BACKGROUND

28.    The 1120 Columbia Property is a single-family home.  Dinamico purchased the 1120 Columbia Property in June 2018 and sold it on November 6,

---

[1] Hinton was employed as the Director of the City of Scranton's Department of Licensing, Inspections, and Permits (hereinafter "*LIPS Department*").  Hinton held his position beginning in January 2014 and was terminated by acting Mayor Wayne Evans in August 2019.

2019.   The 1120 Columbia Property was condemned prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

29.    The 1629 Pittston Property is a building consisting of two (2) commercial storefronts on the first floor, in addition to two (2) residential units on the second floor, plus a detached single-family home that was condemned at the time of purchase.   1629 Pittston purchased the property in July 2017 and has owned it since then.  The 1629 Pittston Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

30.    The 111 Prospect Property is a building consisting of four (4) residential units.   111 Prospect purchased the property in April 2017 and has owned it since then.  The 111 Prospect Property was condemned prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

31.    The 101-103 Prospect Property is a building consisting of six (6) residential units.  East Scranton Properties purchased the property in May 2014, and 101 Prospect purchased the property in July 2018 and has owned it since then. The 101-103 Prospect Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

32.    The 425-27 Colfax Property is a building consisting of two (2) residential units.  425 Colfax purchased the property in April 2017 and has owned

it since then.  The 425-427 Colfax Property was condemned prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

33.    The 106-108 S. Main Property is a building consisting of two (2) commercial storefronts, in addition to six (6) residential units.  106 S. Main purchased the property in September 2016 and has owned it since then.  The 106-108 S. Main Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

34.    The 610-612 Prospect Property is a building consisting of three (3) residential units.  610 Prospect purchased the property in September 2018 and has owned it since then.  The 610-612 Prospect Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

35.    The 1401 Prospect Property is a building consisting of six (6) residential units.  1401 Prospect purchased the property in October 2013 and has owned it since then.  The 1401 Prospect Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

36.    The 857 Capouse Property is a building consisting of four (4) residential units.  857 Capouse purchased the property in 2012 and has owned it since then.  The 857 Capouse Property was condemned prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

37.    The 114 Prospect Property is a building consisting of four (4) residential units. 114 Prospect purchased the property in November 2013 and has owned it since then. The 114 Prospect Property was condemned prior to purchase. Plaintiffs built 114 Prospect from the ground up as new construction after demolishing the old condemned house at a substantial cost to Plaintiffs.

38.    The 536-538 Property is a building consisting of six (6) residential units. 536-538 Beech purchased the property in November 2015 and has owned it since then. The 536-538 Beech Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

39.    The 932 Capouse Property is a building consisting of two (2) residential units. 932 Capouse purchased the property in October 2012 and has owned it since then. The 932 Capouse Property was condemned prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

40.    The 821-823 Madison Property is a building consisting of four (4) residential units. 821 Madison purchased the property in January 2008 and has owned it since then. The 821-823 Madison Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

41.    The 1326 E. Gibson Property is a building consisting of four (4) residential units. 1326 Gibson purchased the property in May 2013 and has owned

it since then.  The 1326 E. Gibson Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

42.    The 643 Monroe Property is a building consisting of three (3) residential units.  643 Monroe purchased the property in February 2010 and has owned it since then.  The 643 Monroe Property was renovated and rehabilitated at a substantial cost to Plaintiffs.

43.    The 212 Ash Property is a building consisting of four (4) residential units.  212 Ash purchased the property in October 2012 and has owned it since then.  The 212 Ash Property was condemned prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

44.    The 110 Prospect Property is a property consisting of a residential duplex in the front, as well as a detached commercial building/garage in the rear. 110 Prospect purchased the property in February 2018 and has owned it since then. The 110 Prospect Property was in a downtrodden and debilitated state prior to purchase and renovated and rehabilitated at a substantial cost to Plaintiffs.

I.    **Background of discriminatory and unequal treatment of Guiffrida and Guiffrida-affiliated entities and properties.**

45.    Guiffrida and the various Guiffrida-affiliated entities own at least thirty-three (33) properties throughout the City of Scranton, consisting of over one hundred (100) individual rental units.

46.    Guiffrida and Guiffrida-affiliated entities have been publicly praised for their efforts and investment in rehabilitating the City.

47.    Overall, and as described in detail below, the City issued literally dozens of criminal citations in at least over forty-nine (49) different docketed court actions against Guiffrida and the Guiffrida-affiliated entities, all of which were resolved ultimately in favor of Plaintiffs.

48.    In the overwhelming majority of cases, no legitimate violations existed, and/or the Defendant failed to afford Plaintiffs any notice or opportunity to cure the alleged violations of the City ordinances.

49.    The citations were filed as non-traffic, summary criminal proceedings and nearly all were dismissed for lack of any legitimate basis in fact or in law, or Plaintiffs were found not guilty by the presiding Magistrate.

50.    The City's actions repeatedly deprived Guiffrida and the Plaintiff-entities of their rights to use and profit from the Properties and resolution of same required a significant expense of time, effort, money, and resources.

51.    The Defendant's intentional, arbitrary and capricious treatment of Guiffrida and the Guiffrida-affiliated entities began in January 2014, when Courtright began his first term as Mayor of the City[2], and Hinton began his tenure

---

[2] On July 1, 2019, the United States Attorney for the Middle District of Pennsylvania filed a three (3) count Information against former Mayor Courtright

as Director of the LIPS Department, and continued repeatedly and consistently through August 2019, when Hinton was terminated by acting Mayor Wayne Evans.

52.     Guiffrida, a vocal and outspoken political opponent of former Mayor Courtright, was targeted and treated differently, selectively, and maliciously by the City pursuant to official policies, practices, and customs adopted by the City.

53.     At all relevant times, upon information and belief, Hinton operated at the behest of and acted under the direction of Courtright, as well as under his own accord personally, as well as under his official capacity as Director of LIPS.

54.     Moreover, in May 2015, Guiffrida and various Guiffrida-affiliated entities filed a class action case against the City in the Lackawanna County Court of Common Pleas, Docket No. 3499-cv-2015, regarding the City's annual rental registration fees (the "***Rental Registration Class Action***").

55.     Upon information and belief, Guiffrida and the Plaintiff-entities continued to be targeted and treated differently, selectively, and maliciously as a result of filing the Rental Registration Class Action.

---

to Case 3:19-cr-00208-CCC.  Among other things, the Information states that victims who needed permits, licenses, and other official authorizations and actions from the City's LIPS Department (of which Hinton is the former Director, having been terminated by former acting Mayor Wayne Evans in August 2019), were the targets of bribery demands and adverse official actions to compel certain payments and contributions.

56.    Moreover, in December 2016, Guiffrida and various Guiffrida-affiliated entities filed a class action case against the City in the Lackawanna County Court of Common Pleas, Docket No. 6933-cv-2016, regarding the City's annual refuse fees (the "***Refuse Class Action***").

57.    Upon information and belief, Guiffrida and the Plaintiff-entities continued to be targeted and treated differently, selectively, and maliciously as a result of filing the Refuse Class Action.

58.    Moreover, on or about October 12, 2017, Plaintiffs posted a sign at the 106-108 S. Main Property publicly voicing political opposition to former Mayor Courtright.

59.    Moreover, on or about October 12, 2017, Plaintiffs posted a sign at the 111 Prospect Property publicly voicing political opposition to former Mayor Courtright.

60.    Upon information and belief, Guiffrida and the Plaintiff-entities continued to be targeted and treated differently, selectively, and maliciously as a result of voicing political opposition to former Mayor Courtright.

61.    Upon information and belief, City's actions were motivated by a purpose of discrimination and retaliation for Plaintiffs' exercise of their First Amendment rights to petition the government and in violation of Plaintiffs' Fourth

and Fourteenth Amendment rights as well as the rights afforded to Plaintiffs under state law.

62.    Immediately following Plaintiffs' filing of the Rental Registration Class Action, the Refuse Class Action, and the posting of the signs at the 106-108 S. Main Property and the 111 Prospect Property publicly voicing political opposition to former Mayor Courtright, the City and its officials and agents continued and intensified their attacks on properties within the City of Scranton that Guiffrida owned, controlled or managed, and expanded their attacks to include more properties which Guiffrida owned, controlled or managed.

63.    In their intensified attacks on Plaintiffs, Defendant continued its misuse of legal authority, resorted to retaliation and intimidation under color of law, and engaged, through the misuse of legal process, in an extensive campaign of harassment, intimidation and economic debilitation against Plaintiffs in violation of their constitutional rights.

64.    The numerous criminal citations, threats of condemnation, improper permit denials, intentional delays in the permitting and inspections processes, and stop work orders issued by Defendant following Plaintiffs' filing of the Rental Registration Class Action, the Refuse Class Action, and the posting of the signs at the 106-108 S. Main Property and the 111 Prospect Property publicly voicing political opposition to former Mayor Courtright, were issued in bad faith, to harass,

oppress, punish and otherwise deter Plaintiffs from exercising their constitutional rights.

65.     Defendant's baseless and harassing allegations inflicted great financial harm on the Plaintiffs and psychological harm on Guiffrida, and defense of the City's baseless complaints became the Plaintiffs' primary business, rather than their lawful pursuit of business in the City of Scranton.

## II.     Illegal and arbitrary actions with regard to the 1120 Columbia Property.

66.     Dinamico purchased the 1120 Columbia Property in June 2018 in a condemned and downtrodden state set for demolition by the City, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

67.     In July 2018, upon application of Plaintiffs, the City's Housing Appeals Board (hereinafter "**HAB**"), granted Plaintiffs' application to remove the 1120 Columbia Property from the demolition list.

68.     Dinamico and/or its registered and/or licensed contractors applied for building, mechanical, electrical, and/or plumbing permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

69.    Throughout the course of repairs and renovations to the 1120 Columbia Property, the City and Hinton issued multiple baseless stop work orders.

70.    On or about July 10, 2018, Guiffrida attempted to submit a dumpster permit application to the LIPS Department, at which time Guiffrida was advised that Hinton's Department will no longer accept any of Guiffrida's applications, and he was directed to contact the City's solicitors; as such, on July 10, 2018, Guiffrida emailed the City's solicitors to advise accordingly and to notify the solicitors that he intended to drop off the dumpster permit application at the City's Law Department on July 11, 2018, which he did.

71.    Notwithstanding the same, on July 16, 2018, the City filed a citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-359-2018; on October 23, 2018, Magistrate Paul Ware found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

72.    On July 24, 2018, the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-373-2018; on October 23, 2018, Magistrate Paul Ware found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

73. On July 26, 2018, the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-378-2018; on October 23, 2018, Magistrate Paul Ware found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

74. On July 26, 2018, the City filed another citation against Plaintiffs for "accumulation of rubbish" to Magisterial Docket No. MJ-45106-NT-379-2018; on October 23, 2018, Magistrate Paul Ware found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 18 SA 167, by way of Order dated September 17, 2019, the Honorable Judge Vito Geroulo found Plaintiffs "not guilty" of the cited violation "due to lack of evidence," and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

75. In one specific instance, the City and Hinton forwarded to Plaintiffs a letter dated November 26, 2018 denying a permit application on the ground that a previously-issued quality of life ticket and stop work order needed to be paid prior to the issuance of the permit, notwithstanding the fact that Plaintiffs were exercising their due process rights by contesting the previously-issued quality of life ticket and stop work order through the legal process.

76.    In addition, on December 28, 2018, Plaintiffs emailed Northeast Inspection Consultants ("***NEIC***") (the City's third-party inspection company hired to perform building inspections in the City) in order to request the scheduling of inspections for the building, electrical, and plumbing work performed pursuant to the duly approved and issued permits; in response, NEIC emailed Plaintiffs and advised that Hinton had instructed NEIC not to perform any inspections on the 1120 Columbia Property, without any right, authority, or rational basis.

77.    On January 2, 2019, the City filed a citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45106-NT-14-2019; the baseless citation was later withdrawn on February 13, 2019 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

78.    On March 19, 2019 the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-120-2019; on July 10, 2019, Magistrate Paul Ware dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

79.    On April 8, 2019 the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-160-2019; on July 10, 2019, Magistrate Paul Ware dismissed the baseless citation

for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

80.    On April 24, 2019 the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-208-2019; on July 10, 2019, Magistrate Paul Ware dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

81.    On April 24, 2019 the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45106-NT-209-2019; on July 10, 2019, Magistrate Paul Ware dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

82.    Ultimately, the City issued the certificate of occupancy for the 1120 Columbia Property on November 7, 2019, only after multiple protracted battles with Defendant and its officials and agents with authority to act for the City.

83.    The City's baseless and arbitrary actions delayed the completion of renovations on the 1120 Columbia Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

84.    Moreover, Plaintiffs were not given adequate prior notice or opportunity to cure any perceived defects prior to the issuance of the aforementioned citations, all of which were baseless, arbitrary, and selective.

85.    From July 2018 through April 2019, the City issued the nine (9) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

III.    **Illegal and arbitrary actions with regard to the 1629 Pittston Property.**

86.    1629 Pittston purchased the 1629 Pittston Property in July 2017, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

87.    1629 Pittston and/or its registered and/or licensed contractors applied for building, mechanical, electrical, and/or plumbing permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

88.    In fact, 1629 Pittston and/or its registered and/or licensed contractors applied for and were granted at least fifteen (15) separate permits between July 10, 2017 and January 3, 2018.

89.    Throughout the course of repairs and renovations to the 1629 Pittston Property, the City and Hinton issued at least one (1) baseless stop work order.

90.    Once the repairs and renovations were completed, the City and Hinton purposefully and baselessly refused to allow final inspections to occur so as to delay the issuance of the certificate of occupancy.

91.    Throughout the course of construction, NEIC performed several periodic inspections and approved the work completed pursuant to the permits.

92.    Nonetheless, the City and Hinton refused to allow NEIC to perform final inspections, and the City and Hinton refused to provide Plaintiffs with the reasons for refusal to allow NEIC to perform final inspections; accordingly, on February 13, 2018, Plaintiffs' counsel forwarded a letter to the City's solicitors to address the issue.

93.    On or about February 14, 2018, Plaintiffs were advised by the City and Hinton that two (2) quality of life tickets needed to be paid prior to NEIC performing final inspections, notwithstanding the fact that Plaintiffs were exercising their due process rights by contesting the previously-issued quality of life tickets through the legal process.

94.    Accordingly, Plaintiffs paid the two (2) quality of life tickets on February 14, 2018, under duress and protest because of the fact that Plaintiffs were not afforded due process and an opportunity to defend the quality of life tickets; accordingly, on February 16, 2018, Plaintiffs' counsel forwarded a letter to the City's solicitors to address the issue.

95.     Ultimately, the City issued the certificate of occupancy for the one (1) commercial storefront of the 1629 Pittston Property on February 16, 2018, and the City issued the certificates of occupancy for the two (2) residential units on the second floor, as well as the detached single-family home, on March 5, 2018, only after multiple and protracted battles with Defendant and its officials and agents.

96.     Notwithstanding the same, on March 26, 2018 the City filed a citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45103-NT-95-2018; on September 13, 2018, Magistrate Terrence Gallagher dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

97.     On March 26, 2018 the City filed another citation against Plaintiffs for "working without a license" to Magisterial Docket No. MJ-45103-NT-96-2018; on September 13, 2018, Magistrate Terrence Gallagher dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

98.     On November 19, 2018 the City filed another citation against Plaintiffs for "working without a license" to Magisterial Docket No. MJ-45103-NT-382-2018; on February 19, 2019, Magistrate Terrence Gallagher dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs

were forced to expend time, effort, money, and resources to defend against the baseless citation.

99.    On November 19, 2018 the City filed another citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45103-NT-383-2018; on February 19, 2019, Magistrate Terrence Gallagher dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

100.   On July 11, 2019 the City filed another citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45103-NT-240-2019; on August 27, 2019, Magistrate Kipp Adcock found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

101.   On July 11, 2019 the City filed another citation against Plaintiffs for "working without a license" to Magisterial Docket No. MJ-45103-NT-241-2019; on August 27, 2019, Magistrate Kipp Adcock found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

102.   The City's baseless and arbitrary actions delayed the completion of renovations on the 1629 Pittston Property, caused Plaintiffs to incur significant

costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

103.    Moreover, Plaintiffs were not given adequate prior notice or opportunity to cure any perceived defects prior to the issuance of the aforementioned citations, all of which were baseless, arbitrary, and selective.

104.    From March 2018 through July 2019, the City issued the six (6) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

**IV.    Illegal and arbitrary actions with regard to the 111 Prospect Property.**

105.    111 Prospect purchased the 111 Prospect Property in April 2017 in a condemned and downtrodden state set for demolition by the City, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

106.    In May 2017, upon application of Plaintiffs, the City's Zoning Hearing Board (hereinafter "*ZHB*"), approved the 111 Prospect Property as a four (4) unit residential building.

107.    111 Prospect and/or its registered and/or licensed contractors applied for building, mechanical, electrical, and/or plumbing permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to

obtain permits which should have been granted without issue or delay in the normal course of business.

108.   On September 8, 2017, the City filed a citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45103-NT-348-2017; the baseless citation was later withdrawn on June 13, 2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

109.   On September 8, 2017, the City filed another citation against Plaintiffs for "City permit to be displayed" to Magisterial Docket No. MJ-45103-NT-349-2017; the baseless citation was later withdrawn on June 13, 2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

110.   On September 8, 2017, the City filed another citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45103-NT-350-2017; the baseless citation was later withdrawn on June 13, 2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

111.   On September 8, 2017, the City filed another citation against Plaintiffs for "City permit to be displayed" to Magisterial Docket No. MJ-45103-NT-351-2017; the baseless citation was later withdrawn on June 13, 2018 only after

Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

112.  On September 11, 2017, the City filed another citation against Plaintiffs for "work continues after stop work order" to Magisterial Docket No. MJ-45103-NT-355-2017; the baseless citation was later withdrawn on June 13, 2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

113.  On September 11, 2017, the City filed another citation against Plaintiffs for "work continues after stop work order" to Magisterial Docket No. MJ-45103-NT-356-2017; the baseless citation was later withdrawn on June 13, 2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

114.  Moreover, on or about October 12, 2017, Plaintiffs posted a sign at the 111 Prospect Property publicly voicing political opposition to former Mayor Courtright.

115.  Thereafter, on May 23, 2018, the City filed another citation against Plaintiffs for "prohibited occupancy" to Magisterial Docket No. MJ-45103-NT-185-2018; on December 4, 2018, Magistrate Sean McGraw found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 1 SA 2019, by way of Order dated March 4, 2020,

the Honorable Judge Robert A. Mazzoni found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

116.   On October 29, 2019, the City filed another citation against Plaintiffs for "failure to register rental units" to Magisterial Docket No. MJ-45103-NT-409-2019; the baseless citation was later withdrawn on December 10, 2019 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

117.   The City's baseless and arbitrary actions delayed the completion of renovations on the 111 Prospect Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

118.   Moreover, Plaintiffs were not given adequate prior notice or opportunity to cure any perceived defects prior to the issuance of the aforementioned citations, all of which were baseless, arbitrary, and selective.

119.   From September 2017 through October 2019, the City issued the eight (8) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

120.   Throughout the course of repairs and renovations to the 111 Prospect Property, the City and Hinton issued at least one (1) baseless stop work order.

121.   Once the repairs and renovations were completed, the City and Hinton purposefully and baselessly refused to allow final inspections to occur so as to delay the issuance of the certificate of occupancy.

122.   Throughout the course of construction, NEIC performed several periodic inspections and approved the work.

123.   Eventually, on June 6, 2018, NEIC performed a final inspection of the 111 Prospect Property and issued a final inspection report certifying the property's compliance in all respects with the Pennsylvania Uniform Construction Code ("*UCC*").

124.   The UCC, specifically 34 Pa. Code § 403.46, provides: "A building code official shall issue a certificate of occupancy within 5 business days after receipt of a final inspection report that indicates compliance with the Uniform Construction Code."

125.   Accordingly, pursuant to the UCC, the City and Hinton were required to issue the certificate of occupancy by June 13, 2018, five (5) business days from NEIC's final inspection report dated June 6, 2018.

126.   Despite multiple requests by Plaintiffs, the City and Hinton refused to issue the certificate of occupancy.

127.   In addition, on July 2, 2018, Hinton told Guiffrida that the City's LIPS Department will no longer deal with or assist Guiffrida and his companies

whatsoever with respect to any matters involving licensing, inspections, and permits, and Hinton directed Guiffrida to deal with the City's solicitors for any and all matters involving licensing, inspections, and permits within the City.

128.   Accordingly, on July 11, 2018, Plaintiffs' counsel sent a letter to the City's solicitors demanding issuance of the certificate of occupancy by the close of business on Friday, July 13, 2018.

129.   The City and Hinton failed and refused to issue the certificate of occupancy.

130.   As such, on July 16, 2018, Plaintiffs were forced to file a Petition for Writ of Mandamus against the City and Hinton in the Lackawanna County Court of Common Pleas at docket number 2018-CV-3858 (the "***Mandamus Action***"), as a direct result of the City's and Hinton's continued refusals and denials to issue the certificate of occupancy relative to the 111 Prospect Property, despite Plaintiffs' satisfaction of all conditions precedent required to be met for the issuance of the certificate of occupancy.

131.   Incredibly, within mere hours of the filing of Plaintiffs' Mandamus Action, the City's solicitors forwarded via email to Plaintiffs' counsel the certificate of occupancy for the 111 Prospect Property issued on July 16, 2018.

132.   The City's and Hinton's conduct was contrary to Pennsylvania law and represented a continued pattern, policy and custom of selective targeting and

enforcement, discrimination, and harassment against Plaintiffs, as well as abuse of power, abuse of process, and malicious and intentional treatment.

133.   The City's and Hinton's illegal and arbitrary actions were wholly without any rational basis.

134.   As a result of the City's and Hinton's wrongful conduct, Plaintiffs were forced to file the Mandamus Action to compel the City to perform a public act or duty which it was required to perform, that is, to issue the certificate of occupancy relative to the 111 Prospect Property.

135.   As a result of the City's and Hinton's conduct, Plaintiffs were forced to expend time and resources, and to incur attorneys' fees and court costs, needlessly.

136.   Plaintiffs had no other adequate remedy at law to compel the City and Hinton to issue the certificate of occupancy relative to the 111 Prospect Property, aside from filing the Mandamus Action.

137.   Prior to filing the Mandamus Action, Plaintiffs and their counsel attempted, in good faith, to resolve this matter amicably without the need to file suit, to no avail.

138.   Plaintiffs had no other recourse to obtain the certificate of occupancy relative to the 111 Prospect Property other than to file the Mandamus Action,

notwithstanding the fact that the right of Plaintiffs to obtain the certificate of occupancy relative to the 111 Prospect Property was undeniably clear.

139.   The City's baseless and arbitrary actions delayed the completion of renovations on the 111 Prospect Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## V.   <u>Illegal and arbitrary actions with regard to the 101-103 Prospect Property</u>.

140.   East Scranton Properties purchased the 101-103 Prospect Property in May 2014 in a downtrodden state, and 101 Prospect purchased the 101-103 Prospect Property in July 2018, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

141.   East Scranton Properties, 101 Prospect, and/or their registered and/or licensed contractors applied for building permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

142.   Throughout the course of repairs and renovations to the 101-103 Prospect Property, the City and Hinton issued multiple baseless stop work orders.

143.    On March 26, 2018 the City filed a citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45103-NT-97-2018; on June 26, 2018, Magistrate Joanne Price Corbett dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

144.    On March 26, 2018 the City filed another citation against Plaintiffs for "City permit to be displayed" to Magisterial Docket No. MJ-45103-NT-98-2018; on June 26, 2018, Magistrate Joanne Price Corbett dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

145.    On March 26, 2018 the City filed another citation against Plaintiffs for "working without a license" to Magisterial Docket No. MJ-45103-NT-99-2018; on June 26, 2018, Magistrate Joanne Price Corbett dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

146.    On December 17, 2018 the City filed another citation against Plaintiffs for "disposal of rubbish or garbage/dumping" to Magisterial Docket No. MJ-45103-NT-408-2018; on February 19, 2019, Magistrate Joanne Price Corbett dismissed the baseless citation for lack of any legitimate basis in fact or in law, and

Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

147.   On March 13, 2019 the City filed another citation against Plaintiffs for "violation of property maintenance/exterior property area sanitation" to Magisterial Docket No. MJ-45103-NT-81-2019; on July 11, 2019, Magistrate Sean McGraw found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

148.   The City's baseless and arbitrary actions delayed the completion of renovations on the 101-103 Prospect Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

149.   Moreover, Plaintiffs were not given adequate prior notice or opportunity to cure any perceived defects prior to the issuance of the aforementioned citations, all of which were baseless, arbitrary, and selective.

150.   From March 2018 through March 2019, the City issued the five (5) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

## VI.    <u>Illegal and arbitrary actions with regard to the 425-427 Colfax Property</u>.

151.    425 Colfax purchased the property in April 2017 in a condemned and downtrodden state set for demolition by the City, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

152.    425 Colfax and/or its registered and/or licensed contractors applied for building, mechanical, electrical, and/or plumbing permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

153.    Throughout the course of repairs and renovations to the 425-427 Colfax Property, the City and Hinton issued multiple baseless stop work orders.

154.    On April 6, 2017, Plaintiffs applied for a building permit to renovate the condemned 425-427 Colfax Property, consisting of two (2) residential units, utilizing Dinamico's valid HIC license issued by the Pennsylvania Office of Attorney General, PA HIC # 63506.

155.    The UCC, specifically 34 Pa. Code § 403.63, provides: "A building code official shall grant or deny a permit application, in whole or in part, within 15 business days of the filing date or the application is deemed approved."

156.    The City and Hinton failed to adhere to Section 403.63, and as such, Plaintiffs' April 6, 2017 building permit application was deemed approved by operation of law.

157.    In fact, on May 8, 2017, City inspectors and NEIC performed an inspection of the 425-427 Colfax Property during the course of construction.

158.    Nonetheless, on May 15, 2017, thirty-nine (39) days after Plaintiffs' April 6, 2017 building permit application was submitted, the City and Hinton issued a letter denying the building permit and issuing a stop work order on the baseless ground that the permit applicant is not a general contractor in the City, notwithstanding the fact that the 425-427 Colfax Property consists of only two (2) residential units and thus Dinamico's HIC license is valid to perform the work.

159.    On June 16, 2017, the City filed a citation against Plaintiffs for "operating or vending without the proper permit or license" to Magisterial Docket No. MJ-45102-NT-433-2017; on September 13, 2017, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

160.    On June 16, 2017, the City filed another citation against Plaintiffs for "City permit to be displayed" to Magisterial Docket No. MJ-45102-NT-434-2017; on September 13, 2017, Magistrate Alyce Hailstone Farrell found Plaintiffs "not

guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

161. On June 16, 2017, the City filed another citation against Plaintiffs for "working without a license" to Magisterial Docket No. MJ-45102-NT-435-2017; on September 13, 2017, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

162. Ultimately, the City issued the certificate of occupancy for the 425-427 Colfax Property on October 12, 2017, only after multiple and protracted battles with Defendant and its officials and agents.

163. On February 8, 2018, the City filed another citation against Plaintiffs for "littering or scattering rubbish" to Magisterial Docket No. MJ-45102-NT-54-2018; on April 10, 2018, Magistrate Alyce Hailstone Farrell dismissed the baseless citation for lack of any legitimate basis in fact or in law, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

164. The City's baseless and arbitrary actions delayed the completion of renovations on the 425-427 Colfax Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

165.  Moreover, Plaintiffs were not given adequate prior notice or opportunity to cure any perceived defects prior to the issuance of the aforementioned citations, all of which were baseless, arbitrary, and selective.

166.  From June 2017 through February 2018, the City issued the four (4) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

**VII.  Illegal and arbitrary actions with regard to the 106-108 S. Main Property.**

167.  106 S. Main purchased the 106-108 S. Main Property in September 2016, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

168.  106 S. Main and/or its registered and/or licensed contractors applied for building permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

169.  On or about September 12, 2016, 106 S. Main applied for a building permit to renovate the 106-108 S. Main Property.

170.  On or about September 13, 2016, the City and Hinton denied the building permit.

171.   106 S. Main appealed the City's denial of the building permit to the City's HAB.

172.   On October 17, 2016, the City's HAB sustained the appeal and overturned the City's and Hinton's decision to deny the building permit.

173.   In its October 18, 2016 written decision, the HAB ruled that the "building permit was only granted specifically for the above commercial property based on the information provided by the property owner that smaller sized commercial buildings were granted a building permit without having a General Contractor's license, only a Home Improvement license."

174.   The HAB's ruling highlights the Defendant's continued pattern, policy and custom of selective enforcement and targeting against Plaintiffs.

175.   The City's and Hinton's baseless and arbitrary actions in denying the building permit delayed the completion of renovations on the 106-108 S. Main Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

176.   On or about October 12, 2017, Plaintiffs posted a sign at the 106-108 S. Main Property publicly voicing political opposition to former Mayor Courtright; as a consequence, it is believed and therefore averred that the City, Hinton, and former Mayor Courtright continued a pattern, policy and custom of selective

enforcement and targeting against Plaintiffs in an effort to silence their protected freedom of speech under the First Amendment of the U.S. Constitution and to retaliate against the Plaintiffs for the public political opposition.

## VIII. Illegal and arbitrary actions with regard to the 610-612 Prospect Property.

177.   610 Prospect purchased the 610-612 Prospect Property in September 2018, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

178.   On March 13, 2019, the City filed a citation against Plaintiffs for "violation of property maintenance/exterior property area sanitation" to Magisterial Docket No. MJ-45103-NT-82-2019; on July 11, 2019, Magistrate Sean McGraw found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

179.   The City issued the one (1) aforementioned summary criminal citation against Plaintiffs, which was resolved in Plaintiffs' favor.

180.   The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

40

**IX.    Illegal and arbitrary actions with regard to the 1401 Prospect Property.**

181.    1401 Prospect purchased the 1401 Prospect Property in October 2013, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

182.    On March 13, 2019, the City filed a citation against Plaintiffs for "violation of property maintenance/exterior property area sanitation" to Magisterial Docket No. MJ-45103-NT-83-2019; on July 11, 2019, Magistrate Sean McGraw found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

183.    The City issued the one (1) aforementioned summary criminal citation against Plaintiffs, which was resolved in Plaintiffs' favor.

184.    The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

**X.    Illegal and arbitrary actions with regard to the 857 Capouse Property.**

185.    857 Capouse purchased the 857 Capouse Property in 2012 in a condemned and downtrodden state set for demolition by the City, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

186.    On May 9, 2012, upon application of Plaintiffs, the City's ZHB approved the 857 Capouse Property as a four (4) unit residential building.

187.   The ZHB's May 9, 2012 decision in favor of Plaintiffs occurred under the City's administration prior to former Mayor Courtright's election and Hinton's appointment as the LIPS Director.

188.   On July 3, 2012, upon application of Plaintiffs, the City's LIPS Department (under the Administration prior to Courtright and Hinton) approved and issued a building permit to Plaintiffs to completely renovate and rehabilitate the 857 Capouse Property, specifically to sheetrock walls, spackle, install new kitchens, install exterior decks, paint, concrete sidewalks, repair exterior stucco, install new moldings, and blacktop the parking lot.

189.   The July 3, 2012 building permit was approved and issued by Mark Seitzinger, the LIPS Director prior to Hinton.

190.   Plaintiffs performed and completed, and the City (under the Administration prior to Courtright and Hinton), inspected and approved all work pursuant to the building permit.

191.   Notwithstanding the same, on May 5, 2015, Hinton forwarded a letter to Plaintiffs threatening to close and condemn the 857 Capouse Property based on an absurd and baseless allegation that the 857 Capouse Property was unlawfully occupied.

192.   The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## XI.   Illegal and arbitrary actions with regard to the 114 Prospect Property.

193.   114 Prospect purchased the 114 Prospect Property in November 2013 in a condemned and downtrodden state set for demolition by the City, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

194.   On May 7, 2015, the City filed a citation against Plaintiffs for "prohibited occupancy" to Magisterial Docket No. MJ-45103-NT-189-2015; on June 25, 2015, Magistrate Joanne Corbett found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 15 SA 128, by way of Order dated March 5, 2019, the Honorable Judge Vito Geroulo dismissed the citation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

195.   The City issued the one (1) aforementioned summary criminal citation against Plaintiffs, which was resolved in Plaintiffs' favor.

196.   The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

**XII.    Illegal and arbitrary actions with regard to the 536-538 Beech Property.**

197.    536 Beech purchased the 536-538 Beech Property in November 2015, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

198.    On February 2, 2017, the City filed a citation against Plaintiffs for "accumulation of rubbish or garbage" to Magisterial Docket No. MJ-45103-NT-48-2017; on March 28, 2017, Magistrate Joanne Corbett found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 17 SA 59, by way of Order dated March 5, 2019, the Honorable Judge Vito Geroulo dismissed the citation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

199.    On February 2, 2017, the City filed another citation against Plaintiffs for "high weeds, grass or plant growth" to Magisterial Docket No. MJ-45103-NT-49-2017; on March 28, 2017, Magistrate Joanne Corbett found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 17 SA 60, by way of Order dated March 5, 2019, the Honorable Judge Vito Geroulo dismissed the citation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

200.    On February 2, 2017, the City filed another citation against Plaintiffs for "accessory structures" to Magisterial Docket No. MJ-45103-NT-50-2017; on March 28, 2017, Magistrate Joanne Corbett found Plaintiffs "not guilty" of the

cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

201.   The City issued the three (3) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

202.   The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## XIII.  Illegal and arbitrary actions with regard to the 932 Capouse Property.

203.   932 Capouse purchased the 932 Capouse Property in October 2012 in a condemned and downtrodden state set for demolition by the City, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

204.   932 Capouse and/or its registered and/or licensed contractors applied for building, mechanical, electrical, and/or plumbing permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

205.   Throughout the course of repairs and renovations to the 932 Capouse Property, the City and Hinton issued multiple baseless stop work orders.

206.  On May 29, 2015, the City filed a citation against Plaintiffs for "accessory structures" to Magisterial Docket No. MJ-45106-NT-255-2015; on July 7, 2015, Magistrate Paul Ware found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 15 SA 129, by way of Order dated March 5, 2019, the Honorable Judge Vito Geroulo dismissed the citation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

207.  On May 29, 2015, the City filed another citation against Plaintiffs for "accumulation of rubbish or garbage" to Magisterial Docket No. MJ-45106-NT-256-2015; on July 7, 2015, Magistrate Paul Ware found Plaintiffs guilty of the cited violation; however, on appeal to the Lackawanna County Court of Common Pleas to Docket No. 15 SA 130, by way of Order dated March 5, 2019, the Honorable Judge Vito Geroulo dismissed the citation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

208.  On November 25, 2015, the City Hinton directed a letter to Plaintiffs denying the building permit applied for on November 20, 2015 and issuing a stop work order on the baseless ground that the property had been condemned since 2009.

209.  In reality, the 932 Capouse Property was fully released from condemnation under Mark Seitzinger, the LIPS Director prior to Hinton, and

additionally, two (2) building permits were previously approved and issued by Seitzinger, one on October 26, 2012, and another on July 29, 2013.

210.    The City issued the two (2) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

211.    The City's baseless and arbitrary actions delayed the completion of renovations on the 932 Capouse Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## XIV.    Illegal and arbitrary actions with regard to the 821-823 Madison Property.

212.    821 Madison purchased the 821-823 Madison Property in January 2008, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

213.    821 Madison and/or its registered and/or licensed contractors applied for building, mechanical, electrical, and/or plumbing permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

214.   On September 9, 2016, Hinton forwarded a letter to Plaintiffs denying the building permit application and issuing a stop work order, without any valid grounds or rational basis.

215.   On September 20, 2016, the City filed a citation against Plaintiffs for "stop work order – unlawful continuance" to Magisterial Docket No. MJ-45102-NT-658-2016; on November 2, 2016, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

216.   On September 20, 2016, the City filed another citation against Plaintiffs for "City permit to be displayed" to Magisterial Docket No. MJ-45102-NT-660-2016; on November 2, 2016, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

217.   On October 27, 2016, the City filed another citation against Plaintiffs for "City permit to be displayed" to Magisterial Docket No. MJ-45102-NT-798-2016; on December 13, 2016, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

218.   The City issued the three (3) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

219. The City's baseless and arbitrary actions delayed the completion of renovations on the 821-823 Madison Property, caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## XV. **Illegal and arbitrary actions with regard to the 1326 E. Gibson Property.**

220. 1326 Gibson purchased the 1326 E. Gibson Property in May 2013, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

221. On March 7, 2017, the City filed a citation against Plaintiffs for "littering or scattering rubbish" to Magisterial Docket No. MJ-45102-NT-139-2017; on April 25, 2017, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

222. On May 11, 2017, the City filed another citation against Plaintiffs for "accumulation of rubbish or garbage" to Magisterial Docket No. MJ-45102-NT-328-2017; on July 12, 2017, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

223. On July 20, 2017, the City filed another citation against Plaintiffs for "littering or scattering rubbish" to Magisterial Docket No. MJ-45102-NT-507-

2017; on August 31, 2017, Magistrate Alyce Hailstone Farrell found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

224. The City issued the three (3) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

225. The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## XVI. Illegal and arbitrary actions with regard to the 643 Monroe Property.

226. 643 Monroe purchased the 643 Monroe Property in February 2010, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

227. On September 12, 2018, the City filed a citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45102-NT-549-2018; the baseless citation was later withdrawn on September 19, 2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

228. On September 12, 2018, the City filed another citation against Plaintiffs for "temporary dumpster permit required" to Magisterial Docket No. MJ-45102-NT-550-2018; the baseless citation was later withdrawn on September 19,

2018 only after Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation.

229.  The City issued the two (2) aforementioned summary criminal citations against Plaintiffs, all of which were resolved in Plaintiffs' favor.

230.  The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

**XVII. Illegal and arbitrary actions with regard to the 212 Ash Property.**

231.  212 Ash purchased the 212 Ash Property in October 2012, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

232.  On June 9, 2016, the City filed a citation against Plaintiffs for "outside placement of indoor appliances/furniture" to Magisterial Docket No. MJ-45106-NT-276-2016; on August 16, 2016, Magistrate Paul Ware found Plaintiffs "not guilty" of the cited violation, and Plaintiffs were forced to expend time, effort, money, and resources to defend against the baseless citation

233.  The City issued the one (1) aforementioned summary criminal citation against Plaintiffs, which was resolved in Plaintiffs' favor.

234.  The City's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

**XVIII.    Illegal and arbitrary actions with regard to the 110 Prospect Property.**

235.    110 Prospect purchased the 110 Prospect Property in February 2018 in a downtrodden and debilitated state, and renovated and rehabilitated the property at a substantial cost to Plaintiffs.

236.    The 110 Prospect Property is a property consisting of a residential duplex in the front, as well as a detached commercial building/garage in the rear.

237.    Plaintiffs and/or its registered and/or licensed contractors applied for building, plumbing, electrical, and/or mechanical permits, most of which were initially denied and/or granted only after Defendant delayed and harassed Plaintiffs unnecessarily and forced Plaintiffs to expend time, effort, money, and resources to obtain permits which should have been granted without issue or delay in the normal course of business.

238.    Throughout the course of repairs and renovations to the 110 Prospect Property, the City and Hinton issued multiple baseless stop work orders.

239.    On March 1, 2018, Thomas Oleski, Deputy Director of the City's LIPS Department ("*Oleski*"), approved and issued a building permit to Dinamico for work on the 110 Prospect Property.

240.    Dinamico holds a valid HIC license issued by the Pennsylvania Office of Attorney General, PA HIC # 63506, and as such is permitted to perform work on residential duplexes.

241.   On March 19, 2018, the City and Hinton posted a stop work order relative to the 110 Prospect Property (although the stop work order was mistakenly posted at the wrong property (111 Prospect Avenue)).

242.   The stop work order stated to contact the City's Zoning Officer, Jack Sweeney ("*Sweeney*"); as such, Guiffrida personally contacted Sweeney on March 19, 2018, but Sweeney advised that he was not aware what, if anything, needed to be completed to remove the stop work order.

243.   Thereafter, on March 20, 2018, the City and Hinton issued a letter revoking the building permit previously approved and issued by Oleski on March 1, 2018, on the baseless ground that a general contractor license was required to perform work on the residential duplex merely because of the existence of the detached commercial building/garage in the rear.

244.   On May 1, 2018, the City and Hinton approved and issued a building permit to Plaintiffs' general contractor for the scope of work on the detached commercial building/garage.

245.   Having secured the permit for work on the detached commercial building/garage through Plaintiffs' general contractor, on May 11, 2018 Plaintiffs applied for a building permit to perform the work on the residential duplex through Dinamico's valid HIC license.

246.   On May 31, 2018, Hinton issued a letter denying the building permit application, again on the baseless ground that a general contractor license was required to perform work on the residential duplex merely because of the existence of the detached commercial building/garage in the rear, despite the fact that Plaintiffs' general contractor had already secured the permit to work on the detached commercial building/garage.

247.  The City's and Hinton's baseless and arbitrary actions caused Plaintiffs to incur significant costs to defend the property and their rights, and prevented Plaintiffs from freely enjoying or utilizing the property for income-producing purposes.

## COUNT I

## 42 U.S.C. § 1983 – Fourteenth Amendment to the United States Constitution

## Procedural Due Process

### (Plaintiffs v. Defendant)

248.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

249.  Plaintiffs have constitutionally-protected property interests in the Properties.

250.  Plaintiffs have been subjected to arbitrary, capricious and unlawful actions of the Defendant, as fully described in this Complaint, including without

limitation Defendant's filing of large numbers of meritless citations against the Plaintiffs, and retaliating against the Plaintiffs for filing the Rental Registration Class Action and the Refuse Class Action, and otherwise exercising Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

251.    Baseless criminal citations, permit denials, refusals to allow lawful inspections, intentional delays in the inspections and permitting processes, unlawful stop work orders, and baseless threats of condemnations of the Plaintiffs' Properties have been undertaken without the benefit of adequate prior notice to the Plaintiffs or an opportunity to cure any purported violations.

252.    The City's post-deprivation procedures have also proven ineffective.

253.    Moreover, Plaintiffs' use of the post-deprivation procedures did not result in the correction of the City's actions but rather led to an intensification of the City's arbitrary and capricious conduct.

254.    The City's actions were in violation of the Plaintiffs' procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and in violation of the procedural due process afforded under the City's building codes; stop work orders were issued baselessly and buildings were threatened to be condemned without adequate prior notice and without any

reasonable basis, even though no emergency existed to warrant such action and a pre-deprivation notice and hearing were feasible.

255.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

      (a)    All unlawful stop work orders and threats of condemnations to be lifted and overturned;

      (b)    All unlawful denials of permits to be lifted and overturned;

      (c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

      (d)    A permanent injunction enjoining the Defendant, their agents and employees from:

            1.    enforcing the City's laws, ordinances, policies and procedures in a discriminatory, non-uniform way;

2.      utilizing the City's laws, ordinances, policies, customs, and procedures to harass and/or retaliate against Plaintiffs;

3.      utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.      subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and proper.

## **COUNT II**

## **42 U.S.C. § 1983 – Fourteenth Amendment to the United States Constitution**

## **Substantive Due Process**

### **(Plaintiffs v. Defendant)**

256.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

257.   The aforementioned actions of the Defendant, which were arbitrary, irrational, outrageous, contrary to the City's own regulations, in bad faith, and designed to prevent Plaintiffs from enjoying their rights as property owners and from conducting their businesses, constitute conduct which shocks the conscience and violates the Plaintiffs' substantive due process rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

258.   The most notable examples of Defendant's conduct violating Plaintiffs' substantive due process rights include, without limitation:

(a)    Threatening condemnation of Properties;

(b)    Posting baseless stop work orders;

(c)    Directing other mandates requiring immediate work as to make Plaintiffs' compliance impossible;

(d)    Retaliating against Plaintiffs for exercising their rights to appeal and challenge the Defendant's arbitrary actions with regards to their Properties;

(e)    Issuing numerous baseless criminal citations against Plaintiffs;

(f)    Intentionally delaying the inspections and permitting processes;

(g)    Engaging in a pattern of conduct, policy, and custom as set forth herein, to intentionally harass Plaintiffs and deny them the benefit of the ownership of their Properties;

(h)   Filing large numbers of meritless citations against the Plaintiffs to retaliate against the Plaintiffs for filing the Rental Registration Class Action, the Refuse Class Action, and otherwise exercising Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

259.   Defendant treated Plaintiffs disparately due to Plaintiffs' exercise of their constitutional right to petition the government.

260.   Moreover, Defendant's conduct was intentionally injurious and knowingly committed without justification.

261.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)   All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)   All unlawful denials of permits to be lifted and overturned;

(c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)    A permanent injunction enjoining the Defendant, their agents and employees from:

1.    enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

2.    utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.    subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and proper.

## COUNT III

## 42 U.S.C. § 1983, 1985 – Fourteenth Amendment to the United States Constitution

## Equal Protection

## (Plaintiffs v. Defendant)

262.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

263.   The Defendant has engaged in the intentional, purposeful, unequal and discriminatory enforcement of the City's laws, ordinances, policies and procedures against Plaintiffs.

264.   Defendant has administered the laws, ordinances, policies and procedures of the City with an evil intent and an unequal hand, so as to illegally discriminate against Plaintiffs.

265.   The Defendant intentionally applied the laws, policies, customs, and procedures of the City in a different and more onerous manner than applied to other similarly situated individuals based on the Plaintiffs' exercise of their First Amendment rights to petition the government.

266.   The laws, ordinances, policies and procedures of the City have not been enforced in a uniform fashion within the City, but instead Plaintiffs have had provisions applied to them that have not been uniformly applied to all others similarly circumstanced in the City.

267.    Hinton and the other inspectors and code enforcement officials of the City's LIPS Department were instructed to stringently apply the City's laws, ordinances, policies, customs, and procedures to the Plaintiffs in order to harass, discriminate and retaliate against the Plaintiffs.

268.    The enforcement of the City's laws, ordinances, policies, customs, and procedures is arbitrary, capricious and particularly directed against Plaintiffs based on their expression of ideas and opinions, and enforcing their right to petition the government, in violation of their rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

269.    The Defendant has caused, directed, approved and ratified the aforesaid actions which constitute violations of Plaintiffs' constitutional rights.

270.    The Defendant's aforesaid enforcement of the City's laws, ordinances, policies and procedures violates the equal protection clause of the Fourteenth Amendment.

271.    As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

272.    Plaintiffs have no adequate or complete remedy at law to address the violations of their constitutional rights.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)    All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)    All unlawful denials of permits to be lifted and overturned;

(c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)    A permanent injunction enjoining the Defendant, their agents and employees from:

1.    enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

2.    utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.     subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)     Compensatory and punitive damages;

(f)     Reasonable attorneys' fees and costs of suit; and

(g)     Such other and further relief as this Court may deem just and proper.

## COUNT IV

## 42 U.S.C. § 1983 – First Amendment to the United States Constitution

### (Plaintiffs v. Defendant)

273.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

274.   The Defendant acted arbitrarily and in bad faith, in retaliation for Plaintiffs' exercise of their First Amendment Rights to free speech, to petition the government, and to engage in protected political speech.

275.   Among other retaliatory actions described in this Complaint, Defendant undertook a series of calculated efforts to selectively target Plaintiffs and to attempt to intimidate Plaintiffs into silence, including, but not limited to, filing a large number of meritless citations against the Plaintiffs to retaliate against the Plaintiffs for speaking out publicly against former Mayor Courtright, for filing

the Rental Registration Class Action, for filing the Refuse Class Action, and for otherwise exercising Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

276.   Defendant's retaliatory actions violated Plaintiffs' First Amendment rights to free speech and to petition the government.

277.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)   All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)   All unlawful denials of permits to be lifted and overturned;

(c)   A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)   A permanent injunction enjoining the Defendant, their agents and employees from:

1.   enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

2.   utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

3.   utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.   subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)   Compensatory and punitive damages;

(f)   Reasonable attorneys' fees and costs of suit; and

(g)   Such other and further relief as this Court may deem just and proper.

## COUNT V

## 42 U.S.C. § 1983 – Fifth and Fourteenth Amendments to the United States Constitution

### (Plaintiffs v. Defendant)

278.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

279.   The Defendant has intentionally, willfully, recklessly and unlawfully implemented the policies, customs, and procedures of the City to deprive Plaintiffs of all beneficial uses of their Properties during the period when the Properties have been unlawfully denied permits, subjected to baseless stop work orders, subjected to intentional delays in the inspections and permitting processes, and threatened to be closed and condemned for no legitimate reasons.

280.   The aforementioned actions of the Defendant, which are arbitrary, irrational, outrageous, and in bad faith, deprived Plaintiffs of the beneficial uses of their Properties, constitute conduct which shocks the conscience and violates the Plaintiffs' due process rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

281.   By arbitrarily denying permits, threatening condemnations of Properties, and issuing baseless stop work orders on various Plaintiff-affiliated entities and Properties throughout the City, the Defendant has effectively taken the Properties without providing Plaintiffs with just compensation in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

282.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend

substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

    (a)    All unlawful stop work orders and threats of condemnations to be lifted and overturned;

    (b)    All unlawful denials of permits to be lifted and overturned;

    (c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

    (d)    A permanent injunction enjoining the Defendant, their agents and employees from:

        1.    enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

        2.    utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

        3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.      subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)     Compensatory and punitive damages;

(f)     Reasonable attorneys' fees and costs of suit; and

(g)     Such other and further relief as this Court may deem just and proper.

## COUNT VI

## 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments to the United States Constitution

### Unreasonable Search and Seizure

### (Plaintiffs v. Defendant)

283.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

284.   Plaintiffs repeatedly requested that Hinton be excluded from jurisdiction over any of Plaintiffs' Properties.

285.   Plaintiffs also expressly prohibited Hinton from entering upon any of Plaintiffs' Properties without Plaintiffs' knowledge or consent.

286.   Nevertheless, Defendant repeatedly surveilled and entered upon Plaintiffs' Properties without the owner's consent and without an administrative search warrant.

287.   Moreover, the City effectively seized several of Plaintiffs' Properties, and the prospective profits associated with the ownership of such Properties, when threatening condemnation of the Properties without any prior due process or legal basis; issuing baseless stop work orders to prevent repairs; intentionally delaying the inspections and permitting processes; refusing to issue certificates of occupancy in the normal of business and pursuant to the law; and refusing to grant permits to allow Plaintiffs to further rehabilitate and rent out the Properties.

288.   At all times, the Defendant acted intentionally, willfully, and recklessly to unlawfully implement the policies and procedures of the City and deprive the Plaintiffs of their constitutional rights, including, *inter alia*, their right to privacy and unreasonable government interference.

289.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)    All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)    All unlawful denials of permits to be lifted and overturned;

(c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)    A permanent injunction enjoining the Defendant, their agents and employees from:

    1.    enforcing the City's laws, ordinances, policies and procedures in a discriminatory, non-uniform way;

    2.    utilizing the City's laws, ordinances, policies, customs and procedures to harass and/or retaliate against Plaintiffs;

    3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

    4.    subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and proper.

## COUNT VII

## 42 U.S.C. § 1983

### (Plaintiffs v. The City of Scranton)

290.    The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

291.    The Defendant has caused, directed, approved and/or ratified the aforesaid actions which constitute violations of Plaintiffs' constitutional rights.

292.    Director Hinton's conduct and actions undertaken in his official capacity as the head of the City of Scranton's Department of Licensing, Inspections and Permits constituted official policy-making on behalf of the City and established policy, custom, and practice of the City which caused the violations of Plaintiffs' constitutional rights set forth herein.

293.    The City's policies, customs, and practices as implemented by and/or acquiesced in by its municipal decision-makers and/or policymakers caused the above constitutional violations.

294.    The City's failure to adequately train and supervise its employees at the Department of Licensing, Inspections and Permits, including Director Hinton, or to respond to Plaintiffs' numerous attempts at communicating and resolving the

alleged issues, has caused the above constitutional violations and amounts to a deliberate indifference to and callous disregard of the rights of the Plaintiffs.

295.   The acts of the Defendant were willful, wanton, malicious and oppressive, were motivated solely by the desire to harm Plaintiffs and by hatred of and ill will toward Plaintiffs, and were performed in a malicious and wanton disregard for Plaintiffs' constitutional rights.

296.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)   All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)   All unlawful denials of permits to be lifted and overturned;

(c)   A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)   A permanent injunction enjoining the Defendant, their agents and employees from:

1.  enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

2.  utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

3.  utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.  subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)  Compensatory and punitive damages;

(f)  Reasonable attorneys' fees and costs of suit; and

(g)  Such other and further relief as this Court may deem just and proper.

## **COUNT VIII**

## **42 U.S.C. § 1983 – Malicious Prosecution**

### **(Plaintiffs v. Defendant)**

297.  The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

298. The City and its officials, including Hinton, initiated legal proceedings against the Plaintiffs by issuing the meritless stop work orders and numerous baseless criminal citations.

299. Probable cause did not exist for the aforementioned actions of the Defendant in the overwhelming majority of instances.

300. At all times, the Defendant acted maliciously or for a purpose of harassing and retaliating against the Plaintiffs, rather than bringing the Plaintiffs to justice.

301. As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

    (a)    All unlawful stop work orders and threats of condemnations to be lifted and overturned;

    (b)    All unlawful denials of permits to be lifted and overturned;

    (c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)    A permanent injunction enjoining the Defendant, their agents and employees from:

1.    enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

2.    utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.    subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and proper.

## COUNT IX

## Malicious Prosecution – State Law

### (Plaintiffs v. Defendant)

302.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

303.   The City and its officials, including Hinton, initiated legal proceedings against the Plaintiffs by issuing the meritless stop work orders and numerous baseless criminal citations.

304.   Probable cause did not exist for the aforementioned actions of the Defendant in the overwhelming majority of instances.

305.   At all times, the Defendant acted maliciously or for a purpose of harassing and retaliating against the Plaintiffs, rather than bringing the Plaintiffs to justice.

306.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

    (a)   All unlawful stop work orders and threats of condemnations to be lifted and overturned;

    (b)   All unlawful denials of permits to be lifted and overturned;

(c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)    A permanent injunction enjoining the Defendant, their agents and employees from:

    1.    enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

    2.    utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

    3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

    4.    subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and proper.

## COUNT X

## Abuse of Process – State Law

## (Plaintiffs v. Defendant)

307.  The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

308.  Defendant repeatedly used the legal process against the Plaintiffs by, among other actions, issuing baseless stop work orders and filing arbitrary and frivolous criminal citations with the Magisterial District Courts.

309.  Defendant's primary purpose was not proper and not one for which the process was designed.

310.  Rather, Defendant aimed to harass Plaintiffs, retaliate against Plaintiffs' exercise of their constitutional rights, and deprive Plaintiffs of any economic advantage associated with the ownership of the Properties.

311.  As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)    All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)    All unlawful denials of permits to be lifted and overturned;

(c)    A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)    A permanent injunction enjoining the Defendant, their agents and employees from:

    1.    enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

    2.    utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

    3.    utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

    4.    subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and
proper.

## COUNT XI

## Tortious Interference with Existing and Prospective Business and Contractual Relationships – State Law

### (Plaintiffs v. Defendant)

312.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

313.   Guiffrida is the sole member of each Plaintiff-entity.

314.   Guiffrida and the Plaintiff-entities had an expectation of profiting from the investment into renovating, renting and using the affiliated Properties.

315.   By threatening to condemn and close the Properties, unlawfully denying permits, issuing baseless stop work orders, intentionally delaying the inspections and permitting processes, and issuing criminal citations to the Plaintiff-affiliated Properties for no reason, or without adequate due process, Defendant acted purposefully, intentionally, willfully and without any privilege or justification, to prevent Plaintiffs from realizing profit from their investments, renovation, rental and usage of the above-mentioned Properties and have interfered with their business relationships with their tenants and potential tenants.

316.   As a consequence and result of the aforesaid acts of the Defendant, Plaintiffs have suffered economic loss, loss of income, severe mental anguish,

emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the Defendant.

WHEREFORE, Plaintiffs respectfully request the following relief

(a)     All unlawful stop work orders and threats of condemnations to be lifted and overturned;

(b)     All unlawful denials of permits to be lifted and overturned;

(c)     A declaratory judgment that the policies, customs, practices and acts complained of herein are illegal and unconstitutional;

(d)     A permanent injunction enjoining the Defendant, their agents and employees from:

    1.     enforcing the City's laws, ordinances, policies, customs and procedures in a discriminatory, non-uniform way;

    2.     utilizing the City's laws, ordinances, policies and procedures to harass and/or retaliate against Plaintiffs;

    3.     utilizing the inspectors of the City's Department of Licensing, Inspections and Permits to harass and/or retaliate against Plaintiffs in the operation of their businesses;

4.     subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City officials;

(e)    Compensatory and punitive damages;

(f)    Reasonable attorneys' fees and costs of suit; and

(g)    Such other and further relief as this Court may deem just and proper.

DATE:  August 17, 2020          BY: /S/ PATRICK HOWARD
                                    Patrick Howard
                                    PA Atty. I.D. No. 88572
                                    **SALTZ, MONGELUZZI, BARRETT
                                    & BENDESKY, P.C.**
                                    1650 Market Street, 52nd Floor
                                    Philadelphia, PA  19103
                                    Phone: (215) 496-8282
                                    Fax: (215) 496-0999
                                    Email:  phoward@smbb.com


                                BY: /S/ PAUL G. BATYKO III
                                    Paul G. Batyko III, Esq.
                                    PA Atty. I.D. No. 306477
                                    **BATYKO LAW LLC**
                                    4113 Birney Avenue
                                    Moosic, PA 18507
                                    Phone: (570) 510-2503
                                    Fax: (570) 392-9044
                                    Email: pbatyko@batykolaw.com


                                    ***Attorneys for Plaintiffs***

## **VERIFICATION**

I, <u>ADAM GUIFFRIDA</u>, PLAINTIFF IN THIS ACTION, VERIFY THAT THE FACTUAL STATEMENTS CONTAINED IN THE FOREGOING COMPLAINT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

I UNDERSTAND THAT FALSE STATEMENTS HEREIN ARE MADE SUBJECT TO THE PENALTIES UNDER LAW RELATING TO UNSWORN FALSIFICATION TO AUTHORITIES.


Date: <u>August 17, 2020</u>          <u>/S/ ADAM GUIFFRIDA</u>
                                   ADAM GUIFFRIDA